<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ALYSSA M.,<br><br>          Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Civil Action No. 24-09388 (GC)<br><br>**<u>MEMORANDUM OPINION</u>** |

**<u>CASTNER, District Judge</u>**

**THIS MATTER** comes before the Court upon Plaintiff Alyssa M.'s[1] appeal from the final decision of the Commissioner of the Social Security Administration (Commissioner[2]) partially denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* After careful consideration of the entire record, including the entire Administrative Record, the Court decides this matter without oral argument in accordance with Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Court **AFFIRMS** the Commissioner's final decision.

---

[1]     Plaintiff is identified by first name and last initial. *See* D.N.J. Standing Order 2021-10.

[2]     Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025. This change has no bearing on the instant matter. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

I.      **BACKGROUND**

A.      **Procedural History**

Plaintiff has a college education and worked as a nurse. (AR 33, 37.)[3]  In November 2020, Plaintiff filed an application for DIB, alleging that she became disabled as of March 25, 2020. (*Id.* at 232.)  Plaintiff alleged that she could not work due to irritable bowel syndrome, immunoglobulin A deficiency, and hypertension. (*Id.* at 262.)  The application was denied on March 12, 2021. (*Id.* at 114-115.)  Upon reconsideration, Plaintiff's claim was denied again on July 22, 2021. (*Id.* at 119.)  On August 10, 2021, Plaintiff filed a request for a hearing before an Administrative Law Judge (ALJ). (*Id.* at 123.)  That hearing took place on August 23, 2023. (*Id.* at 58-86.)

On November 17, 2023, the ALJ issued Plaintiff a partially favorable decision. (*Id.* at 14-51.)  The ALJ concluded that Plaintiff was disabled within the meaning of the Social Security Act from her alleged disability onset date of March 25, 2020 through September 3, 2022. (*Id.* at 19.)  But the ALJ determined that her disability ended on September 4, 2022 when her impairments improved. (*Id.*)  Subsequently, Plaintiff requested a review of the ALJ's decision before the Appeals Council. (*Id.* at 1, 4.)  The Appeals Council denied that request on July 23, 2024. (*Id.* at 1-5.)  Thus, the ALJ's decision became the Commissioner's final decision. (*Id.*)

On September 24, 2024, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g). (ECF No. 1.)  Plaintiff raises one argument: the Residual Functional Capacity (RFC) determination for the period beginning on September 4, 2022 was not supported by substantial evidence because the ALJ failed to properly evaluate four medical opinions. (ECF No. 11 at 5.)

---

[3]      "AR" refers to the Administrative Record, available at ECF No. 6.  This Opinion cites the internal page numbers when referring to the Administrative Record.  Page numbers for all other docket citations refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

**B.      The ALJ's Decision**

*1.        March 25, 2020 through September 3, 2022*

The ALJ used the requisite five-step sequential evaluation process to assess whether Plaintiff was disabled during the initial time period.  (AR 19-20.)  *See also* 20 C.F.R. § 416.920(a)(4) (describing the five-step process).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2025, and "has not engaged in substantial gainful activity since March 25, 2020, the date claimant became disabled[.]"  (AR 22.)[4]

At step two, the ALJ found that since the alleged onset date, Plaintiff "has had the following severe impairments: inflammatory bowel disease with diarrhea, immunoglobulin A deficiency, degenerative disc disease, osteoarthritis, hypertension, bilateral hernias (status-post bilateral repair), obesity (resolved status-post sleeve gastrectomy), mood disorder and anxiety disorder[.]"  (*Id.*)  The ALJ noted that these impairments "significantly limit/limited the ability to perform basic work activities" and thus are severe.  (*Id.* at 24.)

The ALJ determined that Plaintiff's other ailments, including fibromyalgia, hearing loss with tinnitus, status post-sinus surgery, and COVID infection, were not severe.  (*Id.* at 24-25.)  The ALJ noted that he "considered all severe and non-severe impairments in formulating the residual functional capacity . . . and, where appropriate . . . included limitations to address the claimant's non-severe impairments and subjective complaints[.]"  (*Id.* at 25.)

---

[4]      "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 416.972.  Substantial work activity "involves doing significant physical or mental activities.  [A claimant's] work may be substantial even if it is done on a part-time basis or if [the claimant] do[es] less, get[s] paid less, or ha[s] less responsibility than when [the claimant] worked before." *Id.* § 416.972(a).  "Gainful work activity is work activity that [a claimant] do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § 416.972(b).

At step three, the ALJ found that from March 25, 2020 through September 3, 2022, none of Plaintiff's impairments nor any combination of impairments met or medically equaled the severity of any of the impairments listed in the applicable regulation.  (*Id.* at 25.)  *See also* 20 C.F.R. § 416.925(a) (regulation pointing ALJs to "appendix 1 of subpart P of part 404 of this chapter").

At step four, the ALJ conducted an RFC assessment for the March 25, 2020 through September 3, 2022 period to determine whether Plaintiff could perform the requirements of her past relevant work.[5]  (AR 25-31.)  The ALJ concluded

> the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: Never climbing ladders, ropes or scaffolds or crawling, and performing the other postural maneuvers occasionally. With the bilateral upper extremities, reaching overhead never. Must avoid concentrated exposure to extreme cold. Simple routine tasks. Goal-oriented rather than production-paced tasks. Absent from work 2 days a month.

(*Id.* at 26.)  To arrive at this conclusion, the ALJ stated that he "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  (*Id.* (citing 20 C.F.R. §§ 404.1529 and Social Security Ruling (SSR) 16-3p (Evaluation of Symptoms in Disability Claim), 2016 WL 1119029 (Mar. 16, 2016)).)  The ALJ also considered "the medical opinion(s) and prior administrative medical finding(s)."  (*Id.* (citing 20 C.F.R. § 404.1520c).)

Based on this information, the ALJ determined that Plaintiff "was unable to perform any past relevant work" from March 25, 2020 through September 3, 2022.  (*Id.* at 33.)  To reach this

---

[5]    Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a).

conclusion, the ALJ also relied on the vocational expert's testimony, which was "consistent with the information contained in the [Dictionary of Occupational Titles.]" (*Id.* at 34.)

Finally, at step five, the ALJ considered whether jobs existed in the national economy that Plaintiff could perform given her age, education, work experience, and RFC results. (*Id.* at 34-35.) The ALJ reasoned that because the "assessed residual functional capacity for March 25, 2020 through September 3, 2022 provides for absen[ce] from work 2 days a month, the evidence establishes that the claimant had a substantial loss of ability to meet the demands of basic work activities on a sustained basis during said period." (*Id.* at 35.) Therefore, the ALJ concluded that the claimant was disabled during this period. (*Id.*)

### 2.    *September 4, 2022 through November 17, 2023*

The ALJ then applied the requisite eight-step analysis to determine whether claimant's disability "continue[d] [from September 4, 2022] through the date of the decision." (*Id.* at 21 (citing 20 C.F.R. § 404.1594(f)).) The ALJ noted that at step one he "must determine if the claimant is engaging in substantial activity," and at step two he "must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the severity" of a listed impairment. (*Id.*) As before, the ALJ found Plaintiff had not engaged in substantial activity but did not have impairments equaling a listing in the regulations. (*Id.* at 35-36.)

At step three, the ALJ noted that he must determine whether medical improvement occurred, and at step four he must determine whether improvement was related to the ability to work. (*Id.* at 21.) The ALJ found that "the evidence is consistent with improvement" and "related to the ability to work because there has been an increase in the claimant's residual functional capacity." (*Id.* at 41.)

If medical improvement is related to the ability to work, then the ALJ noted he must skip step five, proceed to step six, and evaluate whether the current impairments in combination are severe. (*Id*. at 21-22.) If they are not, then the claimant is no longer disabled. (*Id.* at 22.) The ALJ found the impairments were severe. (*Id.* at 35.)

At step seven, the ALJ stated that he must assess the updated RFC. (*Id.* at 22.) The ALJ found that from September 4, 2022,

> the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: Never climbing ladders, ropes or scaffolds or crawling, and performing the other postural maneuvers occasionally. With the bilateral upper extremities, reaching overhead never. Must avoid concentrated exposure to extreme cold. Simple routine tasks. Goal-oriented rather than production-paced tasks.

(*Id.* at 41.)[6]

To arrive at this conclusion, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (*Id.*) In considering Plaintiff's symptoms, the ALJ stated that he must follow the two-step process that he followed with respect to the earlier time period. (*Id.*) As for the earlier time period, the ALJ found "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms[.]" (*Id.* at 42.) Unlike the previous time period, however, the ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms in the period beginning on September 4, 2022 are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*) The ALJ reasoned that "the record, in the period beginning on September 4, 2022, reveals a conservative course of

---

[6]    The difference between the two RFCs is that the previous one had an additional limitation: "Absent from work 2 days a month." (*Compare* AR 26, *with id.* at 41.)

treatment, a reduced amount of abnormal objective findings (as compared to the period prior to September 4, 2022), and fails to reveal abnormal exam findings." (*Id.*)

The ALJ also reviewed medical opinions and prior administrative medical findings to arrive at his updated RFC determination. The ALJ noted that he would "not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s)" but did "fully consider[] the medical opinion(s) and prior administrative medical finding(s)[.]" (*Id.* at 46.) As is relevant here, the ALJ reviewed the medical opinions of treating providers Drs. Stephen Margulis and Gerard Sykes and medical examiner Dr. Steven Fiske, and the ALJ found those opinions to "have limited persuasiveness." (*Id.* at 47-49.) The ALJ also reviewed the medical opinions of State agency medical consultant Dr. Lloyd Marks and found Dr. Marks' opinions were "not persuasive." (*Id.* at 46-47.)

After formulating the RFC based on the above considerations, the ALJ stated he must evaluate whether the claimant has capacity to perform past relevant work. (*Id.* at 22.) The ALJ found Plaintiff was unable to perform such work because "the exertional level of this work exceeds the exertional level in the assessed residual functional capacity for the period beginning on September 4, 2022." (*Id.* at 50.)

Finally, at step eight, the ALJ stated that he must determine whether other work exists that the claimant can perform given her RFC, age, education, and past work experience. (*Id.* at 22.) A vocational expert testified that Plaintiff could perform jobs such as "Mail Clerk," "Office Helper," or "Dispatcher Router," and provided estimates regarding the number of such jobs available in the economy. (*Id.* at 51.) The ALJ determined that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. (*Id.*) Therefore, the ALJ concluded that "beginning September 4, 2022, the claimant has been capable of making a successful adjustment to other work

7

that exists in significant numbers in the national economy." (*Id.*)  As a result, the ALJ concluded that the claimant was not disabled as of this date.  (*Id.*)

## II.    LEGAL STANDARD

### A.    Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  In conducting this review, the Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations."  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted).  Instead, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and "supported by substantial evidence."  *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citation omitted).

Substantial evidence is "defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'"  *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Evidence is not substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., [evidence] offered by treating physicians)—or if it really constitutes not evidence but mere conclusion."  *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  "Where the ALJ's findings of fact are supported by substantial evidence," the Court is "bound by those findings, even if [it] would have decided the factual inquiry differently."  *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Legal issues, in contrast, are subject to a plenary or de novo review.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019) ("We exercise plenary review over legal conclusions reached by the Commissioner . . . .") (quoting *Chandler*, 667 F.3d at 359).

## B.    Determining Disability

To be eligible for DIB under the Social Security Act, a claimant must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The individual's impairment must be severe to the point that the individual cannot engage in his or her previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where the individual lives or in several regions of the country.  42 U.S.C. § 1382c(a)(3)(B); *Plummer*, 186 F.3d at 427-28.  A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."    42 U.S.C. § 1382c(a)(3)(D).    Disability determinations are made individually "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citation omitted).

## III.    **DISCUSSION**

Plaintiff raises one argument in support of her appeal: the RFC determination for the period beginning on September 4, 2022 was not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinions of Drs. Margulis, Fiske, Sykes, and Marks.  (ECF No. 11 at 5.)  The Commissioner responds that the ALJ explicitly considered the supportability and consistency of each of these medical opinions, and the ALJ's explanation as to those opinions was sufficient for the Court to trace the ALJ's reasoning.  (ECF No. 13 at 6-7.)

"When weighing medical opinions in Social Security matters, administrative law judges must *consider* a range of factors, but all they must *explain* are the reasons for their decisions." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 638 (3d Cir. 2024) (emphasis in original).

Under 20 C.F.R. § 404.1520c(a), for claims filed after March 27, 2017, an ALJ is required to determine the persuasiveness of medical opinions by considering specific factors listed in the regulations. These factors include: (1) supportability; (2) consistency; (3) relationship of the medical source to the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship; (4) specialization; and (5) other relevant factors. *Id.* § 404.1520c(c). Supportability[7] and consistency[8] are the most important factors. *Id.* § 404.1520c(b)(2). Accordingly, an ALJ must "explain how [he] considered [these two] factors" but need not "explain how [he] considered" the other factors." *Id.*

When giving this explanation, the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor." *Zaborowski*, 115 F.4th at 639. Rather, it is sufficient for the ALJ to "weave supportability and consistency throughout her analysis of which doctors were persuasive." *Id.* And because "the regulations seek to enforce a 'source level' analysis, rather than dividing each source's opinions into different units to be separately analyzed," the ALJ need not perform a supportability and consistency analysis "with regard to every aspect of the [medical] opinion." *Pyle v. Comm'r of Soc. Sec.*, Civ. No. 23-815, 2024 WL 4278291, at *1 n.1 (W.D. Pa. Sept. 24, 2024). Further, the ALJ is not required to provide a "written analysis about how [he] considered each piece of evidence." *Joseph P. v. Comm'r of Soc. Sec.*, Civ. No. 21-13524, 2023 WL 1929945,

---

[7]    "Supportability" means that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[8]    "Consistency" means that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

10

at *5 (D.N.J. Feb. 10, 2023) (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132 (Mar. 27, 2017))).  Instead, "[t]he new regulations reflect a 'reasonable articulation standard'" under which the "decision need only 'allow a subsequent reviewer . . . to trace the path of an adjudicator's reasoning.'" *Id.* (quoting 82 Fed. Reg. 5844-01, at 5858).  In tracing this path, "[a]n ALJ 'must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.'" *Tedesco v. Comm'r Soc. Sec.*, 833 F. App'x 957, 961 (3d Cir. 2020) (internal quotation marks and citation omitted).  But "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

Because the ALJ addresses the supportability and consistency of Dr. Fiske's, Dr. Margulis', and Dr. Sykes' medical opinions in tandem, (AR 48-49), the Court will do the same. The ALJ addresses Dr. Marks' medical opinions separately from these three doctors' opinions, (AR 46-47), so the Court will also do the same.

### A.    Drs. Fiske, Margulis, and Sykes

Dr. Fiske opined in October 2020 that Plaintiff's "main limitation" was a "requirement for immediate access to a restroom facility." (*Id.* at 47.)   Dr. Margulis opined in April 2021 that Plaintiff can "at one time, sit for 2 hours, stand for 2 hours, and walk for 2 hours," "needs frequent breaks due to multiple episodes of diarrhea," and "does not have a psychiatric/cognitive impairment." (*Id.*)   In September 2021, Dr. Margulis also opined that Plaintiff "can sit continuously without standard breaks" and did not have a psychiatric or cognitive impairment. (*Id.*) Dr. Sykes opined in September 2022 that Plaintiff "continues to have bowel urgency[.]" (*Id.* at 48.)  In November 2022, Dr. Sykes opined that Plaintiff was "unable to perform any duties in

11

any position due to bowel urgency," and he issued the same opinion in January 2023. (*Id.*)  In August 2023, Dr. Sykes opined that Plaintiff was "unable to stay on task or travel." (*Id.*)

### 1.  Supportability

Plaintiff first argues the supportability analysis with respect to Drs. Fiske, Margulis, Sykes, was "incomplete" because there is no "analysis of what evidence each doctor relied upon in making their opinion." (ECF No. 11 at 21-24.)  The Court disagrees.

The ALJ reasoned that "Dr. Fiske set forth his opinion after setting forth the findings from his exam and the claimant's subjective allegations, both of which presumably are the support for his opinion." (AR 48.)  And the ALJ concluded that Dr. Margulis and Sykes "issued their . . . opinions in the context of examining or recently examining the claimant, presumably meaning that [the information contained in] these exams [was] the support for their opinions." (*Id.*)

The Court finds that the ALJ's supportability analyses are sufficient.  An ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor." *Zaborowski*, 115 F.4th at 639.  When an ALJ "review[s] the Doctor's treatment notes and f[inds] they [do or] d[o] not support the Doctor's conclusion," such an analysis is sufficient. *Tammy L.Z. v. Comm'r of Soc. Sec.*, Civ. No. 23-295, 2025 WL 1779229, at *2 (D.N.J. June 27, 2025).  When articulating these findings, ALJs must offer "[e]xplanations," but they "need not be 'comprehensive'; 'a sentence or short paragraph' will normally do." *Id.* at *2 n.2 (citing *Cotter*, 650 F.2d at 482).

Here, the ALJ explicitly stated "support" for the doctors' opinions existed in the record. (AR 48.)  *Cf. Zaborowski*, 115 F.4th at 639 (finding supportability requirement met even where the ALJ had not stated the "magic word" of "support").  And the ALJ reviewed the doctors' opinions and found they were supported by the treatment notes underlying those opinions. (AR 48.)  The ALJ provided copious citations to those notes, (*id.* (citing AR 431-435, 444, 498-502, 507-512, 584-585, 754-758, 884, 885-886, 892, 895, 899)), so the Court is "able to trace the path

12

of the ALJ's reasoning from evidence to conclusion" and determines the conclusion is supported by substantial evidence. *See Erica S. v. Comm'r of Soc. Sec. Admin.*, Civ. No. 20-6175, 2022 WL 1269788, at *6 (D.N.J. Apr. 28, 2022) (internal quotation marks and citation omitted). Accordingly, the ALJ's one sentence statements that the opinions were supported by the underlying treatment notes are sufficient. *Tammy L.Z.*, 2025 WL 1779229, at *2 & n.5.[9]

### 2.    *Consistency*

Plaintiff also argues that the ALJ improperly evaluated the consistency of these three doctors' opinions regarding the need for restroom access. (ECF No. 11 at 27.)  The Court is unpersuaded.[10]

---

[9]    Plaintiff also argues the ALJ erred because his decision "fail[ed] to state that Drs. Margulis, Fiske, and Sykes relied on [Immunoglobulin A] deficiency in support of their opinions."  (ECF No. 14 at 2; *see also* ECF No. 11 at 24-25.)  Plaintiff's position appears to be that this deficiency was key to these doctors' opinions, and there is no evidence this deficiency went away in the post-September 4, 2022 period. (*See* ECF No. 11 at 24-25.)  But supportability explanations "need not be 'comprehensive'; 'a sentence or short paragraph' will normally do." *Tammy L.Z. v. Comm'r of Soc. Sec.*, Civ. No. 23-295, 2025 WL 1779229, at *2 n.5 (D.N.J. June 27, 2025) (quoting *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981)). And to the extent Plaintiff intends to argue the more general point that the ALJ's RFC determination was not supported by substantial evidence due to the continued presence of the deficiency, the Court disagrees.  The ALJ explicitly addressed the deficiency, (AR 42), and discounted its significance because, "despite [Immunoglobulin A] deficiency, the claimant easily withstood . . . COVID infection in 2023, with treatment simply via medication . . . and without noted ongoing symptoms[,]" (*id.* at 43).

[10]    As an initial matter, some of the opinions that the ALJ found were inconsistent with the record, and thus of limited persuasiveness, were ones that would have been less favorable to Plaintiff's case, so it was beneficial for Plaintiff when the ALJ discounted them as inconsistent. For example, Drs. Fiske and Margulis opined that Plaintiff did not have "any exertional limitations." (AR 48.)  But the ALJ found this was inconsistent with "abnormal abdominal exam findings" and Plaintiff's "detailed history of spinal, hernia, hysterotomy and gastric sleeve surgery," which indicated that Plaintiff did have some exertional limitations. (*Id.*)  Thus, any error with respect to these opinions would necessarily be harmless. *See Gardner v. Berryhill*, Civ. No. 17-1223, 2018 WL 4621845, at *9 (M.D. Pa. July 30, 2018) ("Beyond all doubt, any error committed by the ALJ in rejecting these opinions would certainly be harmless on his part because such rejection created a more favorable light for [the plaintiff] in the assessment of her case."). And the fact that the ALJ rejected opinions that were both favorable and unfavorable to Plaintiff underscores that the ALJ carefully parsed which opinions were consistent and which were not.

Each of the three doctors opined that Plaintiff had work-related limitations due to her bowel disorder. (AR 47-48.) The ALJ found these opinions were "generally consistent with the record since the alleged onset date" but "the claimant is not as limited as the opinions of Drs. Margulis, Fiske and Sykes suggest . . . in the period beginning on September 4, 2022." (*Id.* at 48-49.) The ALJ reasoned that "the claimant failed to specifically allege at the office visits in the period beginning on September 4, 2022" that she had "diarrhea a specific number of times or multiple times a day . . . as she alleged at multiple exams in the period prior to September 4, 2022." (*Id.* at 49.) Similarly, the ALJ was not presented with abnormal abdominal exam findings on or after September 4, 2022. (*Id.*)

Plaintiff responds that the ALJ's analysis was insufficient because the ALJ ignored evidence that Plaintiff continued to experience work-prohibitive diarrhea on or after September 4, 2022. (ECF No. 11 at 27-30.) Plaintiff primarily relies on one page of post-September 4, 2022 evidence indicating that her diarrhea constituted a disabling impairment. (*Id.* at 27-28 (citing AR 886 (August 10, 2023 letter from Dr. Sykes stating that Plaintiff "is unable to work in any capacity to due IBS/diarrhea" because she "is in the bathroom 10-15 minutes for up to 10-12 times daily")).) But the ALJ did not ignore this evidence.[11] Indeed, he addressed it explicitly: "it is noted, a treating provider indicated in a letter dated [] August 10, 2023 that the claimant uses the bathroom up to

---

[11] Plaintiff cites other evidence post-dating September 4, 2022. (ECF No. 11 at 29 (citing AR 893, 900).) But the ALJ likewise addressed this evidence. (*See* AR 43 ("[W]hile the medical evidence, in the period beginning on September 4, 2022, documents the claimant alleging having diarrhea upon office visits on September 20, 2022 and January 11, 2023, and requesting that her provider prepare letters/addendum for a private insurer noting bowel urgency, frequency and/or incontinence at the office visits on September 20, 2022 and January 11, 2023, as well as on November 14, 2022, she failed to specifically allege, at any of these office visits, having diarrhea a specific number of times or multiple times a day[.]" (internal citations omitted)).) The remainder of Plaintiff's evidence pre-dates September 4, 2022. (*See* ECF No. 11 at 27, 29 (citing AR 106, 502, 884, 904).)

14

10-12 times daily." (*Id.* at 43 (citing AR 886).) The ALJ reasoned the letter was inconsistent and of minimal importance given that (1) "the record fails to document the claimant having [diarrhea] at the frequency alleged over any consecutive 12-month period in the period beginning on September 4, 2022"[12] and (2) Plaintiff "specifically denied having diarrhea upon exam on August 8, 2023[.]" (*Id.* (citing 888-889 (notes reporting "Negative" for diarrhea upon "Review of System" exam)).) Accordingly, the ALJ explained the basis for his consistency findings, the Court can trace the path of his reasoning, and his findings are supported by substantial evidence. The ALJ has done all that was required of him. *Zaborowski*, 115 F.4th at 639; *Erica S.*, 2022 WL 1269788, at *6; *Tammy L.Z.*, 2025 WL 1779229, at *2 & n.5.

### B.      Dr. Marks

Dr. Marks, the State agency medical consultant, opined in June 2021 that Plaintiff "only had non severe-physical impairments." (AR 46 (citing AR 103-106).) At the same time, Dr. Marks also opined that Plaintiff "must have unlimited easy access to a bathroom at any time of the day and the time necessary to deal with accidents [and] diaper changes, if necessary[.]" (*Id.*) Plaintiff argues the ALJ's treatment of these opinions requires remand. (ECF No. 11 at 27-31.) The Court disagrees.

#### 1.      *Supportability*

The ALJ determined that Dr. Marks "support[ed] [his] opinion with a discussion of the evidence available to" him. (AR 47 (citing AR 103-106).) The Court finds this supportability analysis sufficient for the same reasons it found the analysis sufficient with respect to Drs. Fiske,

---

[12]     "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medical determinable physical or mental impairments . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Margulis, and Sykes. *See supra* Section III.A.1; *Zaborowski*, 115 F.4th at 639; *Erica S.*, 2022 WL 1269788, at *6; *Tammy L.Z.*, 2025 WL 1779229, at *2 & n.5.

### 2.    *Consistency*

The ALJ found Dr. Marks' first opinion—that Plaintiff had only non-severe physical impairments—was inconsistent with the record because Plaintiff's surgical history, exam findings, and record of treatment indicated that Plaintiff did have severe physical impairments. (AR 46 (citing, *e.g.*, AR 377-414, 419-454, 463-472).) And the ALJ stated that this first opinion was internally inconsistent with Dr. Marks' second opinion that Plaintiff must have "unlimited easy access to a bathroom at any time of the day." (*Id.*) The ALJ also determined that this second opinion was "generally consistent with the record since the alleged onset date" but was "vague as to the phrases 'unlimited easy access to a bathroom' and 'the time necessary.'" (*Id.* (citing, *e.g.*, AR 377-414, 419-454, 463-472).) The ALJ concluded that Dr. Marks' opinions were "not persuasive." (*Id.* at 47.)

The Court finds the ALJ's analysis was sufficient. The ALJ analyzed whether Dr. Marks' opinions were consistent with the record, cited evidence in the record so that the Court can trace the ALJ's reasoning, and made a conclusion supported by that evidence. The ALJ was required to do no more. *See Zaborowski*, 115 F.4th at 639; *Erica S.*, 2022 WL 1269788, at *6; *Tammy L.Z.*, 2025 WL 1779229, at *2 & n.5.[13]

---

[13]    Plaintiff states the ALJ was required to "explain how a claimant's daily activities are inconsistent with a doctor's opined limitations." (ECF No. 11 at 30 (citing *Emily K. v. Dudek*, Civ. No. 22-3279, 2025 WL 762688, at *9 (D.N.J. Mar. 11, 2025)).) *Emily K.* establishes no such requirement. There, the court found the ALJ's consistency analysis insufficient because "[t]he ALJ [did] not cite to any record evidence reflecting an inconsistency." 2025 WL 762688, at *9. Here, as discussed, that is not the case. And in any event, while there is no specific requirement for an ALJ to incorporate a daily activities analysis into a consistency explanation, *see e.g.*, *Tammy L.Z.*, 2025 WL 1779229, at *2 & n.5, here, the ALJ thoroughly discussed Plaintiff's daily activities such that the Court is able to derive further support for the ALJ's consistency determinations, even though no such further support is needed under the "substantial evidence" standard, (*see* AR 45

And even if the ALJ's consistency analysis were insufficient, any such error would be harmless for several reasons.  First, the ALJ discounted Dr. Marks' opinion that Plaintiff had only non-severe physical impairments.  In other words, the ALJ discounted an opinion that was unfavorable to Plaintiff's case.  Had the ALJ found the opinion persuasive, such an outcome would have only made it more likely that the ALJ would have found Plaintiff not disabled.  *See Gardner v. Berryhill*, Civ. No. 17-1223, 2018 WL 4621845, at *9 (M.D. Pa. July 30, 2018) ("Beyond all doubt, any error committed by the ALJ in rejecting these opinions would certainly be harmless on his part because such rejection created a more favorable light for [the plaintiff] in the assessment of her case.").

Second, to the extent the ALJ also discounted Dr. Marks' subsequent opinion—that Plaintiff must have "unlimited easy access to a bathroom at any time of the day" (AR 46)—any erroneous discounting was also harmless because it had no effect on the challenged RFC.  *See Roby v. Kijakazi,* Civ. No. 22-1886, 2024 WL 197438, at *9 (W.D. Pa. Jan. 18, 2024) ("[A]ny error committed by the ALJ in his evaluation of supportability [or consistency] regarding the persuasiveness of [the medical expert's] opinions was harmless [because] it did not impact the outcome." (internal quotation marks and citation omitted)).  The only difference between the earlier and later RFCs is that the earlier required an absence of two days a month from work.  (*Compare* AR 26, *with id.* at 41.)  But Dr. Marks did not opine on the need for this two-day absence, (*id.* at 46), so his opinion could not have impacted the new RFC.  Further, the ALJ did not ignore Plaintiff's bowel-related impairments when formulating the new RFC; instead, he explicitly recognized that "the record continues to reveal . . . inflammatory bowel disease with diarrhea."

---

(discussing Plaintiff's daily activities such as preparing meals, performing indoor chores, driving short distances, using a stationary bicycle, and taking short walks)).

(*Id.* at 43.)  Finally, Dr. Marks' opinion is from 2021, (*id.* at 103-106), so it could not have supplied the basis for a more favorable RFC in the period beginning on September 4, 2022.  Indeed, the ALJ was already satisfied with the record from the earlier period to find a disability, and it was the lack of evidence in the later period that caused the ALJ to alter the RFC.  (*Id.* at 43.)  Accordingly, the ALJ did not err, and even if he did, any error was harmless.

## IV.  CONCLUSION

For the foregoing reasons, and other good cause shown, the Commissioner's final decision is **AFFIRMED**.  An appropriate Order follows.

Dated: April 30, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

18